**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

CASE NO. _____

CYNTHIA BUCKLEY,

                    Plaintiff,

vs.


SAN REMO GOLF & TENNIS CLUB
CONDOMINIUM ASSOCIATION, INC.,

              Defendant.

_____/


**COMPLAINT AND DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT**


      COMES NOW Plaintiff, CYNTHIA BUCKLEY, by and through her undersigned counsel and sues the Defendant, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., and states as follows:

**I. NATURE OF THE ACTION**

1.     This is a civil action brought pursuant to the federal Fair Housing Act [hereafter "FHA"], 42 U.S.C. §§ 3601, *et seq.*, 42 U.S.C. § 1982, for damages and injuries arising from the Defendant's, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC.'s unlawful discrimination against Plaintiff, CYNTHIA BUCKLEY, a person with a disability.

**II. PARTIES**

2.     Plaintiff, CYNTHIA BUCKLEY [hereafter "BUCKLEY" and/or "Plaintiff"], a resident and citizen of Palm Beach County, Florida, is an individual with a disability that qualifies her for

the protections of the FHA. Plaintiff resides at 55201 West Club Circle, Unit 103, Boca Raton, Florida 33487.

3.      Defendant, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. [hereafter "SAN REMO" and/or "Defendant" and/or "Association"], is a Florida non-profit corporation, organized and operating pursuant to Chapter 718, Florida Statutes, with its primary place of business and current mailing address 1451 W. Cypress Creek Rd, Suite 310, Fort Lauderdale, FL 33309, which is responsible for administering and governing its housing complex pursuant to its Articles of Incorporation, Declaration of Condominium and By-Laws, its Rules and Regulations, and Amendments thereto. It also sets, approves, and enforces the policies, practices, rules, and regulations for the SAN REMO Community.

4.      SAN REMO's is a condominium association, the essential nature of its operations is to provide housing.

5.      The condominium units governed by SAN REMO are "dwellings" within the meaning of 42 U.S.C. § 3602(b) of the FHA.

6.      SAN REMO is subject to the anti-discrimination provisions of the FHA and amendments thereto.

### III. JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343,  42 U.S.C. § § 3601, *et seq*. and § 3613.

8.      The Court has jurisdiction to declare the rights and legal relations of the parties and to order further relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court is authorized to issue preliminary injunctive relief and a temporary restraining order pursuant to Federal Rules of Civil Procedure

65(a) and 65(b), and to award relief under 42 U.S.C. § 300a-7(c) and (d), including but not limited to, damages and attorneys' fees.

9.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 89(c). because the Defendant has its principal place of business and mailing address in Broward County and  certain events giving rise to the Plaintiff's claims arose in Broward County which is within the confines of the Fort Lauderdale Division of the Southern District of Florida.

10.    All conditions precedent to the bringing of this action by BUCKLEY have occurred, or their performance has been waived by Defendant.

### IV. FACTUAL ALLEGATIONS

11.    BUCKLEY resides and at all times material hereto, has resided at 55201 West Club Circle, Unit 103, Boca Raton, Florida 33487 in a unit located within the SAN REMO community.

12.    At all times material hereto, BUCKLEY suffered from, has a history of suffering from, and still suffers from a mental impairment that substantially limits one or more of her major life activities. Accordingly, BUCKLEY has a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA.

13.    BUCKLEY relies upon an assistance animal, a miniature Goldendoodle named "Winnie." Winnie assists BUCKLEY by providing emotional support that helps BUCKLEY cope with her disability by alleviating one or more identified effects of her disability.

14.    SAN REMO does not allow pets.

15.    On or around May 17, 2023, BUCKLEY requested that SAN REMO accommodate her disability by waiving its no-pet restriction so that she could live in her unit with her emotional support animal ("ESA"). (5/17/2023 Request and Email Exchange with San Remo Property Manager marked and incorporated herein collectively as "Exhibit 1.")

16.     In support of that request, BUCKLEY provided a May 17, 2023, letter from her long-time mental health care provider, Dorit Morecraft, whose licensures and certifications include MSN (Master of Science in Nursing degree), APRN (Advanced Practice Registered Nurse), and PMHNP-BC (Psychiatric-Mental Health Nurse Practitioner) [hereafter "PMHNP Morecraft"]. (5/17/2023 Verification Letter is marked and incorporated herein as "Exhibit 2.")

17.     PMHNP Morecraft verified BUCKLEY's disability, her disability-related need for an ESA, and explained how the ESA helps BUCKLEY cope with her disability. (*Id.*)

18.     On May 22, 2023, SAN REMO's agent, Property Manager Anne Ziegler, emailed BUCKLEY:

> *I am going to wait to send for approval until all the needed items are here so please send what you have Wed. Some get certificates for the ESA animal. If not, vet records and picture along with this letter is what is needed. Thanks Anne*

(5/22/2023 Ziegler Email is marked and incorporated herein as "Exhibit 3.")

19.     On May 26, 2023, in further support of her request, BUCKLEY emailed Ziegler Winnie's vet records, including proof of her vaccinations, and pictures. (Vet vaccination record is marked and incorporated herein as "Exhibit 4.")

20.     On June 5, 2023, SAN REMO, through its agent attorney Alessandra Stivelman, denied BUCKLEY's request for reasonable accommodation of her disability-related need for an ESA. (6/5/2023 Denial Letter is marked and incorporated herein as "Exhibit 5.")

21.     SAN REMO purposefully conveyed its denial on law firm letterhead, sent certified mail, return receipt requested. (*Id.*)

22.     SAN REMO's denial was signed by a lawyer advertising she was a "Partner For the Firm." (*Id.*)

23.     SAN REMO denial was intentionally communicated in the manner it was to intimidate BUCKLEY.

24.     San Remo's denial stated that

> there can be **criminal penalties** if a person falsifies information or documents, or knowingly provides fraudulent information or documents, to support an emotional support animal request, or who otherwise knowingly and willfully **misrepresents** their disability status or needs, commits a misdemeanor offense in the second degree.

(*Id.*) (Double emphasis in original.)

25.     SAN REMO's intentionally insinuated that BUCKLEY was a liar and criminal. (See *id.*)

26.     SAN REMO's denial of BUCKLEY's accommodation was intentionally communicated in an intimidating and threatening manner.

27.     An emotional support animal is not a pet.

28.     SAN REMO refuses to acknowledge that Winnie is not a "pet."

29.     SAN REMO ordered BUCKLEY to "**immediately** remove the dog from the Unit" and threatened her with "further actions being taken by the Association" which included "fines, penalties, and/or legal proceedings" if she did not. (*Id.*) (Double emphasis in original.)

30.     SAN REMO stated that its decision was made *"[a]fter careful consideration and based on a totality of the circumstances…"* (*Id.*)

31.     SAN REMO's denial decision was made and conveyed in less than five (5) business days.

32.     SAN REMO reported in its Denial Letter that "in the process of reviewing the information provided in support of your request" it had conferred with BUCKLEY's "fellow neighbors." (*Id.*)

33.     BUCKLEY's request for reasonable accommodation to SAN REMO was based upon her disability and included the proffer of protected and otherwise confidential mental health information.

34.     An Association may not discuss, share, or reveal protected or otherwise confidential health information, particularly regarding mental health, provided to support a request for reasonable accommodation of a disability with anyone other than those directly involved in considering the request.

35.     SAN REMO never contacted, interviewed, or otherwise communicated with BUCKLEY about her request for accommodation after her May 26th conveyance email to Property Manager Ziegler before denying her request.

36.     Although SAN REMO, through its Property Agent, initially solicited BUCKLEY to "*send what you have…[s]ome get certificates for the ESA animal,*" its Denial Letter stated

> there is currently no recognized assistance animal registration program recognized under the ADA or FHA. Notwithstanding, as set forth in the FHEO Notice No.: FHEO-2020-01 issued on January 28, 2020, some websites sell certificates, registrations, and licensing documents for assistance animals to anyone who answers certain questions or participates in a short interview and pays a fee. Under the Fair Housing Act, a housing provider may request reliable documentation when an individual requesting a reasonable accommodation has a disability and disability-related need for an accommodation that is not obvious or otherwise known. However, HUD notes that in its experience, such documentation from the internet is not, by itself, sufficient to reliably establish that an individual has a non-observable disability or disability-related need for an assistance animal. Furthermore, HUD explicitly states that **healthcare providers must possess personal knowledge regarding their patients' disabilities and associated requirements prior to endorsing such requests**.

(*Id.*) (emphasis in original).

37.     PMHNP Morecraft expressly invited SAN REMO to "please contact my office" "[i]f you have any questions or need additional information." (See Exhibit 2.)

38.     SAN REMO has never contacted, interviewed, or otherwise communicated with PMHNP Morecraft, or even attempted to contact her, about BUCKLEY's request for accommodation or any other reason.

39.     On June 8, 2023, BUCKLEY sent an email to both Property Manager Ziegler and Attorney Silverman requesting that SAN REMO reconsider its denial and contact her and stating:

> We have been visiting Ohio since May 27th. I will not be back until the end of June.
>
> I have complied with all the standard regulations for an ESA. I meet the qualifications for accommodation according to my long-time (since 2021) mental health provider. The dog has been registered in my name as an ESA animal with US Service Dogs.
>
> I formally ask you to rethink your letter and acknowledge my right to an ESA in my home, as the law is clearly in my favor. I have attached the original letter from my personal licensed provider for your convenience. This should be all that you need; however, please let me know if there is any additional information that you need. This is specifically important since no one has reached out to me personally with any questions prior to denying my ESA information. The information in the letter and my need for an ESA has protected information and should not be discussed with anyone else as specified in Hippa regulations.

(1st Reconsideration Request is attached and incorporated herein as "Exhibit 6.")

40.     SAN REMO did not respond.

41.     On June 12, 2023, BUCKLEY, distraught over the denial, sent another email to both Property Manager Ziegler and Attorney Silverman, again requesting that SAN REMO reconsider its denial and contact her stating:

> Thank you for taking the time to review my request and write your response. I am writing this letter to address your delay/denial and persist in requesting reasonable accommodation for my disability.

*My provider is not an online ESA letter provider, and I did not pay for my letter. I paid for mental health services and met the criteria for a disability. My mental health provider has knowledge of my past trauma and has prescribed an ESA to help me. I used my long-time provider, who has treated me for several years. She is a qualified licensed professional, and this should not be confused with companies that just sell a letter. I did not buy anything, I paid for my counseling session, as I would pay for any service with a doctor, dentist or any professional. Buying a prescription is not how I got my letter. My provider did a full evaluation to determine my needs and if my animal could help with my diagnosed disability.*

*I provided you an ESA letter from a licensed professional. I have added information below regarding her licensure and validation. As stated by the FHEO2020-01…."One reliable form of documentation is a note from a person's health care professional that confirms a person's disability and/or need for an animal when the provider has personal knowledge of the individual". FHEO 2020-01 page 11 https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pd*

*More Provider Information*

*Dorit Morecraft, MSN, APRN, PMHNP-BC FL Lic# APRN9492734*

*Success TMS 1325 S. Congress Ave Ste 200, Boynton Beach, FL 33426 561-332-3285*

*License information can be found at this site: htps://mqa-internet.doh.state.fl.us/MQASearchServices/HealthCareProviders…*

(6/12/2023 2nd Reconsideration Request is attached and incorporated herein as Exhibit 7.")

42.     Again SAN REMO failed to respond.

43.    Thereafter BUCKLEY retained legal counsel who sent a letter on June 21, 2023, on BUCKLEY's behalf to SAN REMO's agent, Attorney Stivelman, again requesting SAN REMO reconsider its denial decision and requesting a response by June 28, 2023:

> I hope this correspondence finds you well. I have been retained by Cynthia Buckley to address the denial of her request for accommodation for an emotional support animal. As you are aware, on May 25, 2023, my client requested that San Remo Golf & Tennis Club Condominium Association Inc. waive its pet restriction as an accommodation of her disability.
>
> It would appear that San Remo Golf & Tennis Club Condominium Association Inc. has already violated the Fair Housing Act in multiple ways. First, by discussing Ms. Buckley's request for accommodation with my client's "fellow neighbors" her rights of privacy have been violated. Ms. Buckley's disability-related request for accommodation should never have been discussed with anyone except those directly involved in considering her accommodation request.
>
> Second, if San Remo Golf & Tennis Club Condominium Association Inc. was skeptical of the legitimacy of Ms. Buckley's disability or need for an accommodation, it was obligated to request additional documentation or open a dialogue rather than immediately refusing the requested accommodation. *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1287 (11th Cir. 2014), citing *Jankowski Lee & Associates v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996).
>
> Finally, in addition to flatly denying Ms. Buckley's requested accommodation, the Association caused a threatening letter to be sent to Ms. Buckley warning "that the law also states that there can be **criminal penalties** if a person falsifies information or documents, or knowingly provides fraudulent information or documents, to support an emotional support animal request, or who otherwise knowingly and willfully **misrepresents** their disability status or needs, commits a misdemeanor offense in the second degree." (emphasis in the original) The Association cannot prosecute a person for a crime and had no obligation to provide Ms. Buckley legal advice. The Association's gratuitous legal advice along with the demand that she immediately remove her emotional support animal or face "fines, penalties, and/or legal proceedings" are clearly an illegal attempt to intimidate Ms. Buckley into not pursuing her fair housing rights.
>
> Your letter incorrectly insinuates that Ms. Buckley has proffered a letter she purchased from the internet. To the contrary, she has been treating with

> Dorit Morecraft for a year and a half. The letter written by Ms. Morecraft verifies that Ms. Buckley has a condition that 'substantially limits several major life activities,' and explains how living with Winnie helps ameliorate the symptoms of Ms. Buckley's disability. Accordingly, San Remo Golf & Tennis Club Condominium Association Inc. has been provided more than sufficient information regarding Ms. Buckley's need for an accommodation and I look forward to prompt confirmation that any restrictions that would prevent Ms. Buckley from living with her dog Winnie for emotional support animal will be waived for as long as Ms. Buckley is a resident of San Remo Golf & Tennis Club Condominium Association Inc. If such confirmation has not been provided by June 28, 2023, I will take legal action on Ms. Buckley's behalf.

(6/21/2023 Attorney Request for Reconsideration is attached and marked as "Exhibit 8.")

44.    Although Attorney Stivelman initially responded on June 28, 2023 (a day before the deadline) requesting "two more weeks to reply" (i.e., through July 11, 2023) which was granted, there has been no further reply or communication from her or by any other SAN REMO agent. (6-7/2023 Email Exchange No Response is attached and marked as "Exhibit 9.")

45.    SAN REMO has intentionally and unlawfully discriminated against BUCKLEY by denying her request for reasonable accommodation of her disability-related need for her emotional support animal, Winnie.

46.    SAN REMO has intentionally and unlawfully discriminated against BUCKLEY by refusing to acknowledge that her emotional support animal, Winnie, is not a pet.

47.    SAN REMO has intentionally and unlawfully discriminated against BUCKLEY by sending her a letter through its attorney threatening legal action, imposition of attorney's fees and costs, criminal penalties, and the permanent removal of her assistance animal.

48.    SAN REMO has intentionally and unlawfully intimidated and harassed BUCKLEY by sending her a letter on law firm letterhead signed by a "Partner with the Firm" threatening criminal penalties, legal action, imposition of attorney's fees and costs, and the permanent removal of her assistance animal and insinuating that BUCKLEY is a criminal and a liar.

49.     SAN REMO has intentionally and unlawfully discriminated against BUCKLEY by pointedly engaging in conversations or otherwise conferring with BUCKLEY's "neighbors" about BUCKLEY's ESA.

50.     SAN REMO has intentionally and unlawfully discriminated against BUCKLEY by pointedly engaging in conversations or otherwise questioning BUCKLEY's "neighbors" about BUCKLEY's request for reasonable accommodation.

51.     Granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy would not pose any financial or administrative burden on SAN REMO.

52.     Granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy would not pose an undue financial and administrative burden on SAN REMO.

53.     Granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy would not fundamentally alter the essential nature of SAN REMO's operations as a housing provider.

54.     Granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy would not pose a threat to the health or safety of others.

55.     SAN REMO has no evidence or information that granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy poses a threat to the health or safety of others.

56.     Granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy would not result in significant physical damage to the property of others.

57.     SAN REMO has no evidence or information that granting BUCKLEY's request for reasonable accommodation of her disability-related need for her ESA by waiving its "no pet" policy would result in significant physical damage to the property of others.

58.     SAN REMO neither opened a dialogue with BUCKLEY nor sought additional information regarding BUCKLEY's disability-related need for an accommodation, but instead denied her request and threatened legal action if BUCKLEY did not capitulate to SAN REMO's demand for the immediate and permanent removal of BUCKLEY's emotional support animal.

59.     At all times material, SAN REMO was aware or should have been aware of BUCKLEY's disability and that her dog is an emotional support animal.

60.     At no point did any agent or other representative of SAN REMO speak to BUCKLEY regarding SAN REMO's communications with her "fellow neighbors" about her emotional support animal.

61.     At no point did any agent or other representative of SAN REMO speak to, or attempt to speak to, BUCKLEY's health care provider, PMHNP Morecraft.

62.     The heavy-handed and unduly aggressive nature of SAN REMO's one-sided communications to BUCKLEY regarding her request, coupled with its denial of that request, have caused BUCKLEY to be anxious, depressed, and feel unwelcome in her own home as well as constantly fear the loss of her emotional support animal.

63.     SAN REMO's actions regarding BUCKLEY's emotional support animal has culminated in BUCKLEY being commanded to choose between her home or her assistance animal.

64.     SAN REMO's actions were, and continue to be intentional, deliberate, willful, and in total and reckless disregard of BUCKLEY's rights and show total indifference to BUCKLEY's disability.

65.     SAN REMO's actions are motivated by evil motive or intent, or involve reckless or callous indifference to BUCKLEY's federally-protected rights insofar as SAN REMO's knowledge that its action are in violation of federal law.

66.     BUCKLEY has been injured by SAN REMO's discriminatory housing practices and therefore qualifies as an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

67.     As a direct and proximate result of SAN REMO's conduct, BUCKLEY has incurred and continues to incur attorney's fees, and has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

68.     BUCKLEY retained undersigned counsel and is obligated to pay a reasonable fee for their services.

### V. CAUSES OF ACTION

### COUNT I
### MAKING A DWELLING UNAVAILABLE ON ACCOUNT OF DISABILITY

69.     BUCKLEY re-alleges and incorporates by reference Paragraphs 1-68 as if fully set forth herein.

70.     BUCKLEY is disabled by virtue of a mental impairment which substantially limits one or more of her major life activities.

71.     BUCKLEY has a disability-related need to live with her emotional support animal, Winnie, in order to have the same opportunity to use and enjoy her dwelling at SAN REMO as any non-disabled resident.

72.      BUCKLEY requested that SAN REMO waive its no pet policy so that she may reside with her emotional support animal.

73.      SAN REMO was provided reliable verification of BUCKLEY's disability and disability-related need to live with Winnie.

74.      SAN REMO, fully knowing of BUCKLEY'S disability-related need to live with her assistance animal nonetheless commanded that BUCKLEY remove her assistance animal or face legal action and be forced to pay SAN REMO's legal fees *inter alia*.

75.      SAN REMO had actual knowledge of BUCKLEY's disability and disability-related need to live with Winnie.

76.      SAN REMO's actions and conduct constitute a conscious and reckless disregard for BUCKLEY's rights and show total indifference for her disability.

77.      The foregoing conduct and acts of Defendant constitute discrimination against a person with a disability in violation of 42 U.S.C.§ 3604(f)(l)(A), FHA, by making a dwelling unavailable because of a handicap.

78.      As a result of the Defendant's conduct, Plaintiff has suffered damages.

79.      The discriminatory conduct and actions of Defendant were intentional, willful, and taken in blatant disregard for the Plaintiff's rights.

80.      As a direct and proximate result of SAN REMO's discriminatory conduct, BUCKLEY has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

     **WHEREFORE,** Plaintiff, CYNTHIA BUCKLEY, demands judgment against Defendant, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., declaring that

the actions of SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. violated, *inter alia*, the Fair Housing Act/Fair Housing Amendments Act by discriminating against a person with a disability, and awarding Plaintiff compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief, as well as any other such relief as this Court deems just and equitable.

## COUNT 2
## ILLEGAL INTIMIDATION OF PLAINTIFF
## BECAUSE SHE EXERCISED HER FAIR HOUSING RIGHTS

81.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-68 as if fully set forth herein.

82.     It is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 42 U.S.C.S. §§ 3603, 3604,  and 3606; 42 U.S.C. § 3617.

83.     SAN REMO has engaged in a pervasive, intentional, and unlawfully discriminatory course of conduct intended to intimidate BUCKLEY into abandoning her fair housing rights, including but not limited to:

     a.   Responding to BUCKLEY's request for reasonable accommodation of her disability-related need for her emotional support animal with a threatening letter from an attorney;

     b.   Responding to BUCKLEY's request for reasonable accommodation of her disability-related need for her emotional support animal with a letter on a law firm letterhead signed by a "Partner For the Firm" threatening "criminal penalties" and insinuating that BUCKLEY is a liar;

c.  Communicating with BUCKLEY's neighbors and otherwise culling their involvement in evaluation of BUCKLEY's disability, request, and disability-related need for her emotional support animal;

d.  Sharing protected and otherwise confidential health information, including mental health information, with persons not involved with the decision to approve BUCKLEY's request for reasonable accommodation of her disability-related need for her emotional support animal;

e.  Demanding that BUCKLEY permanently remove her emotional support animal; and

f.  Flatly rejecting perfectly adequate verification of BUCKLEY's disability-related need for an accommodation.

84.   SAN REMO, through its conduct and action described above, violated 42 U.S.C. § 3617 of the FHA by coercing, intimidating, threatening, or interfering with BUCKLEY in the exercise and enjoyment of her fair housing rights and creating an environment hostile to a person with a disability-related need for an emotional support animal.

85.   The discriminatory conduct of SAN REMO was intentional, willful, and taken in disregard for Plaintiff's rights.

86.   As a direct and proximate result of the Defendant's conduct, the Plaintiff has incurred and continues to incur attorney's fees, and suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

**WHEREFORE,** Plaintiff, CYNTHIA BUCKLEY, demands judgment against Defendant, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., declaring that the actions of SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC.

violated, *inter alia*, the Fair Housing Act/Fair Housing Amendments Act by discriminating against a person with a disability, and awarding Plaintiff compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief, as well as any other such relief as this Court deems just and equitable.

**COUNT 3**
**FAILURE TO ACCOMMODATE**

87.     Plaintiff re-alleges and incorporate by reference Paragraphs 1-68 as if fully set forth herein.

88.     BUCKLEY suffers from and has a history of suffering from disabilities that substantially limit one or more of her life activities.

89.     BUCKLEY obtained an emotional support animal help ameliorate the symptoms of her disabilities.

90.     BUCKLEY has a disability-related need to live with her emotional support animal in order to have equal use and enjoyment of her unit in SAN REMO.

91.     BUCKLEY requested that SAN REMO waive its pet restrictions so that she may reside with her emotional support animals.

92.     SAN REMO was provided credible documentation establishing BUCKLEY's disability and that the animal in question would provide disability-related emotional support.

93.     SAN REMO had actual knowledge of BUCKLEY's disability- related need to live with her emotional support animal.

94.     The requested accommodation is necessary so that BUCKLEY can have an equal opportunity to use and enjoy her dwelling as do non-disabled SAN REMO residents.

95.     SAN REMO has made no effort to engage in a good faith dialogue with BUCKLEY or her mental health care provider regarding BUCKLEY's need for an accommodation.

96.     SAN REMO has refused to accommodate BUCKLEY's disability, and instead commanded that her emotional support animal be immediately removed and threatened BUCKLEY with fines and legal actions if she did not capitulate.

97.     Accommodating BUCKLEY's need to reside with Winnie for emotional support would not: 1) result in substantial physical damage to the property of others or that of SAN REMO; 2) pose an undue financial and administrative burden to SAN REMO; or 3) fundamentally alter the nature of SAN REMO's operations as a housing provider.

98.     SAN REMO's refusal  to waive its no pet policy to accommodate BUCKLEY's disability is discriminatory and unlawful.

99.     SAN REMO's actions and conduct constitute a conscious and reckless disregard for BUCKLEY's rights and show total indifference to BUCKLEY's disabilities.

100.    SAN REMO violated 42 U.S.C. § 3604(f)(3)(B) by refusing to make reasonable accommodations in its rules, policies, practices, or services when such accommodations are necessary to afford BUCKLEY an equal opportunity to use and enjoy a dwelling.

101.    The discriminatory conduct of SAN REMO was intentional, willful, and taken in total disregard for BUCKLEY's rights.

102.    As a direct and proximate result of SAN REMO's failure to accommodate, BUCKLEY suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

**WHEREFORE**, Plaintiff CYNTHIA BUCKLEY  demands judgment against Defendant SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., declaring that SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. violated the

Fair Housing Amendments Act by discriminating against a person with disabilities, and awarding CYNTHIA BUCKLEY  compensatory and punitive damages, attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

**COUNT 4**
**INVASION OF PRIVACY/PUBLIC DISCLOSURE OF PROTECTED MENTAL**
**HEALTH INFORMATION**

103.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 68, as if fully set forth herein.

104.    The discriminatory and tortious actions of Defendant in the above federal claims are so related to the state claim that they are part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

105.    At all times material hereto, the Defendant intentionally disclosed, published to, revealed, and/or otherwise discussed with BUCKLEY's "fellow neighbors" in the SAN REMO Community that BUCKLEY requested  a waiver of SAN REMO's no pet policy so that she could have an emotional support animal. Given the stigma that attaches to mental illness, publicizing that a resident suffers from a mental illness would be highly offensive to a reasonable person.

106.    The disclosure or discussion was made or done with the knowledge it would cause BUCKLEY severe emotional distress, or Defendant's actions were recklessly indifferent to the likelihood that the outrageous act of disclosing or discussion BUCKLEY's mental illness to the SAN REMO Community would cause the Plaintiffs severe emotional distress.

107.    The Defendant disclosed BUCKLEY's diagnosis without ever consulting with the BUCKLEY or BUCKLEY'S health care provider.

108.    The sole purpose of PMHNP Morecraft's detailed prescription and letter was to inform the Association of BUCKLEY's mental illness and related need for an ESA. Pursuant to federal

guidance regarding reasonable accommodations, information verifying a disability-related need for an accommodation "must be kept confidential and must not be shared with other persons unless they need the information to make or assess a decision to grant or deny a reasonable accommodation request or unless disclosure is required by law (*e.g.*, a court-issued subpoena requiring disclosure)."[1]

109.    BUCKLEY's disability and the details of her request for an accommodation are not a legitimate concern of other residents of the SAN REMO Community.

110.    The Association's unauthorized and public disclosure that BUCKLEY desires to reside with an emotional support animal was a complete violation of BUCKLEY's privacy; its actions were outrageous and beyond all bounds of decency to be regarded as odious and utterly intolerable in a civilized community.

111.    There is no justification to reveal BUCKLEY's request for an accommodation to anyone not serving on the Association's Board of Directors.

112.    There is no justification to reveal BUCKLEY's request for an accommodation to anyone in any setting or forum which risks disclosure of private health information, particularly mental health information, and particularly in a non-confidential setting.

113.    It is foreseeable that disclosing BUCKLEY's desire for an emotional support animal to her neighbors would exacerbate her existing emotional disability and/or create new emotional distress, causing severe emotional distress.

---

[1]Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act (May 14, 2004), at https://www.justice.gov/crt/us-department-housing-and-urban-development, last visited July 28, 2023.

114. It is foreseeable that publishing to, revealing, and/or otherwise discussing with BUCKLEY's "fellow neighbors" in the SAN REMO Community her request for request for an accommodation of SAN REMO's no pet policy and/or her disability-related need for Winnie would exacerbate her existing emotional disability and/or create new emotional distress, causing severe emotional distress.

115. It is foreseeable that soliciting, culling, or encouraging BUCKLEY's "fellow neighbors" in the SAN REMO Community to discuss BUCKLEY's request for request for an accommodation of SAN REMO's no pet policy and/or her disability-related need for Winnie and/or Winnie would exacerbate her existing emotional disability and/or create new emotional distress, causing severe emotional distress and would incite or encourage those neighbors to further discuss same with others in and outside of the SAN REMO Community.

116. It is foreseeable that disclosing BUCKLEY's request for an accommodation for an emotional support animal in a non-confidential setting would exacerbate her existing emotional disability and/or create new emotional distress, causing severe emotional distress.

117. As a direct and proximate result of Defendant's disclosure, publishing to, revealing, and/or otherwise discussing, soliciting, culling, and/or encouraging discussion of BUCKLEY's protected mental health information with her "fellow neighbors," she has suffered severe emotional distress.

**WHEREFORE,** Plaintiff, CYNTHIA BUCKLEY, demands judgment against Defendant, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., for damages for intentional infliction of emotional distress, and awarding BUCKLEY compensatory and punitive damages, attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

**VI. THIS COURT'S POWER TO GRANT RELIEF**

118.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 68, as if fully set forth herein.

119.    Plaintiff has suffered and incurred irreparable damage, and continues to suffer and incur irreparable damage.

120.    The FHA and Rule 65 of the Federal Rules of Civil Procedure, collectively and singularly, empower this Court to grant a temporary restraining order, preliminary injunctive and permanent injunctive relief, and/or such other relief as the Court may deem appropriate to hold and redress the violations of any provision of law enforced by the FHA. The Court, in the exercise of its equitable jurisdiction may award financial relief, accommodation directives, policy modification, and restoration of access privileges to prevent and remedy any violation of any provision of law enforced by the FHA

**VII. PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff CYNTHIA BUCKLEY, demands judgment against Defendant, SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., and respectfully requests that this Court enter an Order:

a)  declaring that the actions of SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. violated, *inter alia*, the Fair Housing Act/Fair Housing Amendments Act by discriminating against a person with a disability;

b)  issuing a temporary restraining order and preliminary injunction immediately enjoining and prohibiting SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., including but not limited to its Association members, future members, Board of Directors, Officers, property managers, employees, agents, volunteers, interns, attorneys, and representatives from removing, tampering with,

altering, inhibiting, precluding, depriving, limiting, or otherwise interfering with BUCKLEY's residency and/or presence of her emotional support animal at SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC.;

c)   issuing a temporary restraining order and preliminary injunction immediately enjoining and prohibiting SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC., including but not limited to its Association members, future members, Board of Directors, Officers, property managers, employees, agents, volunteers, interns, attorneys, and representatives from discussing BUCKLEY's disability with any person or entity not directly involved with the decision to grant her request for reasonable accommodation of her disability-related need for an emotional support animal;

d)   entering a permanent injunction enjoining and prohibiting Defendant SAN REMO, GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap and equal right to enjoy a dwelling;

e)   requiring Defendant SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. to notify and distribute, in writing to each and every resident of the SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC. Community a legal statement enumerating its residents' FHA rights with respect to, among other things, disability-related accommodations and emotional assistance animals;

f)  awarding to Plaintiff such damages as would fully compensate her for her injuries caused by SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC.'s discriminatory conduct;

g)  awarding to Plaintiff such damages as would fully compensate her for her injuries caused by SAN REMO GOLF & TENNIS CLUB CONDOMINIUM ASSOCIATION, INC.'s conduct associated with disclosure, publishing to, revealing, and/or otherwise discussing, soliciting, culling, and/or encouraging discussion of BUCKLEY's protected mental health information with and among her "fellow neighbors";

h)  awarding to Plaintiff punitive damages;

i)  awarding to Plaintiff her attorney's fees and costs incurred in bringing this action and associated and affiliated with enforcement of the FHA and otherwise associated with her protection thereunder; and

j)  granting all other such relief as this Court deems just and equitable.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

VENZA LAW, PLLC
931 Village Boulevard, #905-322
West Palm Beach, FL 33409
Office: (561) 596-6329
Email: dvenza@venzalawpllc.com


BY: *s/ Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
*Counsel for Plaintiff*

MARCY I. LAHART, P.A.
249 SE Tuscawilla Road
Micanopy, FL 32667
Telephone: (352) 224-5699
Facsimile: (888) 400-1464
Email: marcy@floridaanimallawyer.com


BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiff*